WILLIAM WENDELL BUDROW AND JOAN FRANCES BUDROW, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; MASSACHUSETTS INVESTMENT CORPORATION, BY WILLIAM WENDELL BUDROW, PRESIDENT, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Budrow v. Commissioner
Docket Nos. 9539-78, 12966-78, 9762-79
United States Tax Court
T.C. Memo 1983-434; 1983 Tax Ct. Memo LEXIS 363; 46 T.C.M. (CCH) 849; T.C.M. (RIA) 83434; July 25, 1983. Jonathan A. Brod, for the petitioner Joan F. Budrow.
Robert Percy, for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: These consolidated cases were assigned to and heard by Special Trial Judge Darrell D. Hallett pursuant to the provisions of section 7456(c) of the Internal Revenue Code[1] and Rules 180 and 181, Tax Court Rules of Practice and Procedure.[2] The *364 Court agrees with and adopts his opinion which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE HALLETT, Special Trial Judge: Respondent determined deficiencies and additions to tax as follows: Additions to Tax
Docket No.
Year
Deficiency
Sec. 6653(b)
William Wendell and Joan Frances Budrow
9539-78
1974
$24,748.00
$12,374.00
9762-79
1973
$62,410.79
$31,205.40
1975
$63,991.90
$31,995.95
Massachusetts Investment Corporation
12966-78
1973
$68,067.00
$34,034.00
1974
$40,805.00
$20,403.00
1975
$37,398.00
$18,699.00
The issues for decision are (1) Whether petitioners underpaid their tax liability for each of the periods in question; (2) whether a portion of the understatements were due to fraud; and (3) whether petitioner Joan F. Budrow qualifies for the *365 innocent spouse provisions of section 6013(e).
FINDINGS OF FACT William Wendell Budrow and Joan Frances Budrow filed joint income tax returns for the calendar years 1973, 1974, and 1975. Massachusetts Investment Corporation filed corporate income tax returns for the fiscal years ending April 30, 1973, 1974 and 1975. These cases were calendared for trial at a Special Session of the Court in Washington, D.C. on April 19, 1983. Orders setting the cases for trial were issued on March 4, 1983. Thereafter, respondent's counsel made efforts to contact petitioner William Wendell Budrow in connection with the scheduled trial session. No response from Mr. Budrow was received by respondent, and Mr. Budrow failed to appear on behalf of himself in Docket Nos. 9539-78 and 9762-79, or on behalf of Massachusetts Investment Corporation in Docket No. 12966-78. No other appearances were made on behalf of Mr. Budrow or Massachusetts Investment Corporation in connection with the trial of these cases. As to the underlying deficiencies pertaining to petitioner Mr. Budrow in Docket Nos. 9539-78 and 9762-79, and to Massachusetts Investment Corporation in Docket No. 12966-78, respondent made a Motion *366 for Default pursuant to Rule 123, Tax Court Rules of Practice and Procedure.[3] Petitioners Mr. Budrow and Massachusetts Investment Corporation are clearly in default for failing to appear for trial [4] and therefore respondent should prevail as to the underlying deficiencies. By order dated May 11, 1982, motions by Joan F. Budrow to sever the trial of these cases as to her, to file an amended petition, and to move the trial as to her to Los Angeles, California, were granted. Petitioner Joan F. Budrow thereafter filed an Amendment to Petition alleging that as to the deficiencies determined in Docket Nos. 9539-78 and 9762-79 she should be relieved from any liability by reason of the "innocent spouse" provisions of section 6013(e). An amended Stipulation of Facts was filed on March 21, 1982, wherein respondent and petitioner Joan F. Budrow agreed that, for the years before the Court in Docket Nos. 9539-78 and 9762-79, if the Court finds that there were omissions from gross income exceeding 25 percent of the amount of gross income stated on the returns, petitioner Joan F. Budrow qualifies as an innocent spouse under section 6013(e) and therefore is not liable for any of the deficiencies *367 or additions to tax determined by respondent. At the trial of these cases on April 19, 1983, respondent presented testimony and exhibits which, together with the materials deemed admitted for purposes of these cases by virtue of the Request for Admissions previously served by respondent and not answered by petitioners, establish the following facts. During the periods in issue, the Massachusetts Investment Corporation was a corporation whose stock was owned by or on behalf of petitioners William W. Budrow and Joan F. Budrow (each owning 50 percent). Joan F. Budrow was designated *368 as secretary-treasurer of the corporation and William W. Budrow was president. Each of the corporate income tax returns for the periods involved were signed by William W. Budrow as president. None of the corporate income tax returns for Massachusetts Investment Corporation for the periods in issue disclosed any tax liability, and all showed substantial losses. The individual Federal income tax returns of petitioners William W. and Joan F. Budrow showed no tax liability for 1973 and 1974, and for 1975 showed a tax before credits of $4.00 and claimed an earned income credit of $234. During each of the years in question, Massachusetts Investment Corporation owned and operated an entity known as Chico's Pizza Parlor (Chico's). Chico's had a large separate room in which there were 8 coin operated billiard tables. These tables took a quarter to operate one game. The manager of the establishment during the years in question, Morrie Loranger, had no key to open the tables to collect the coin receipts. Only Mr. and Mrs. Budrow had a key to obtain access to the coin receipts, and from time to time they did in fact collect the coins from the tables. The income from the coin operated *369 tables located in Chico's amounted to at least $20,800 during each of the periods involved in these cases. At least that amount should have been, but was not, reported as income on the returns of the Massachusetts Investment Corporation for the periods in question. Likewise, since the receipts were withdrawn personally by Mr. and Mrs. Budrow, the amounts should have been, but were not, reported on the individual income tax returns of petitioners Mr. and Mrs. Budrow. During the periods in question, petitioner Mr. Budrow had an agreement with Liberty Vendors to supply certain games and amusement machines for use on the premises of Chico's Pizza Parlor whereby 60 percent of the gross receipts from the machines went to petitioner Mr. Budrow and 40 percent to Liberty Vendors. During the periods in question, a representative of Liberty Vendors would come by Chico's weekly and open the machines with a key, divide the coins 60 percent to Chico's Manager, Mr. Loranger, and 40 percent for Liberty Vendors. The coins given to Mr. Loranger were put by him in an office safe and were thereafter picked up by Mr. or Mrs. Budrow. Massachusetts Investment Corporation had income regarding the *370 arrangement with Liberty Vendors for the games and amusement machines in Chico's Pizza Parlor of at least $9,290, $8,255, and $9,988 for the fiscal years ending April 30, 1973, 1974, and 1975. Petitioners Mr. and Mrs. Budrow withdrew the receipts of Massachusetts Investment Corporation from the games and amusement machines for the benefit of petitioner Mr. Budrow to the extent of at least $7,985 for 1973 and $10,634.74 for 1975. None of the receipts resulting from the arrangement with Liberty Vendors was reported on the returns of either Massachusetts Investment Corporation or the returns of Mr. and Mrs. Budrow for the years involved. For the fiscal years ending April 30, 1973, 1974 and 1975, Massachusetts Investment Corporation had cash deposited to its bank account which was not accounted for on its books and records as income and was not reported in its tax returns in the amounts of $111,818, $82,360, and $118,929, respectively. Mr. Budrow indicated to the accountant for Massachusetts Investment Corporation for the periods in question, Reuben Porras, that the reason for the substantial difference between cash deposited in the bank account and that recorded as income on the *371 corporate books and records was that loans had been made during the period in question by one Cora Berry. In fact, Cora Berry did not loan or otherwise transfer any funds whatsoever to petitioner Massachusetts Investment Corporation during the periods in question. Neither did respondent's investigating agents discover any indication that these deposits were from nontaxable sources nor did petitioner Mr. Budrow, despite being given the opportunity to do so, provide any information to respondent's agents during the investigation of these cases as to the nature or source of these deposits. In 1972, Mr. Budrow created a corporation called Ohio Investment Corporation which purportedly entered into negotiations with Mannings Incorporated to purchase a restaurant in Anaheim, California, called Hansa House. Massachusetts Investment Corporation purportedly loaned $30,000 to Ohio Investment Corporation so that it could make the down payment on the purchase from Mannings. Ohio Investment Corporation in turn purportedly entered into an agreement with Massachusetts Investment Corporation that any gain realized from the sale of the Hansa House would be assigned to Massachusetts Investment *372 Corporation. In an affidavit made in March, 1978, and submitted by petitioner Mr. Budrow to the State of California Department of Alcoholic Beverage Control, Mr. Budrow stated that the $30,000 used to purchase the Hansa House was derived from profits over the past years from the operation of Chico's Pizza Parlor by Massachusetts Investment Corporation but was not deposited to its banking account and was kept in cash over a period of time. In December 1972, a 49 percent interest in Hansa House was sold, which resulted in a gain to petitioner Massachusetts Investment Corporation amounting to $29,623. None of the gain was reported on the income tax return of Massachusetts Investment Corporation for the period ending April 30, 1973, or for any other period. During 1974 and 1975, petitioner Mr. Budrow was involved in the sale of amusement rides. These sales were purportedly made through Indiana Corporation, but by 1974 and 1975, Indiana Corporation ceased to be an operating entity. Petitioner Mr. Budrow received income from the sale of amusement equipment and leases in this regard to the extent of at least $16,066 during 1974 and $63,569.68 during 1975. During 1973, 1974, and *373 1975, payments were made by Massachusetts Investment Corporation to or on behalf of petitioners Mr. and Mrs. Budrow in the amounts of at least $82,121.26, $25,924, and $34,187.08. Included in these payments were payments for Mr. and Mrs. Budrow's life insurance and medical premiums, automobile lease, automobile operating expenses, and home telephone bills. Also included were substantial checks payable to cash, cashed by petitioner Mr. Budrow, and checks payable to Mr. and Mrs. Budrow. ULTIMATE FINDINGS OF FACT Massachusetts Investment Corporation had substantial underpayments of tax for the periods ending April 30, 1973, April 30, 1974, and April 30, 1975. A portion of the underpayments of tax of the Massachusetts Investment Corporation for each of the periods ending April 30, 1973, 1974, and 1975 was due to fraud. The income tax returns filed by petitioners Mr. and Mrs. Budrow for the years 1973, 1974 and 1975 and substantial underpayments of tax. A portion of the underpayments of tax with respect to the income tax returns of Mr. and Mrs. Budrow for the years 1973, 1974, and 1975 was due to fraud of Mr. Budrow. For the years 1973, 1974, and 1975, there was omitted *374 from gross income on the Federal income tax returns of petitioners Mr. and Mrs. Budrow amounts in excess of 25 percent of the gross income stated on the returns. OPINION As to the underlying deficiencies in tax for each of the years in question, petitioner Mr. Budrow and Massachusetts Investment Corporation are clearly in default such that a decision should be entered with respect to the full amount of the underlying deficiencies determined. Rule 123. As to the fraud additions, respondent submitted evidence at trial through the testimony of the revenue agent who was primarily involved in the examination of petitioners' returns for the years in question and through documents, including substantial numbers of documents whose authenticity was admitted by virtue of Requests for Admissions. The evidence in this regard clearly and convincingly establishes that there were substantial underpayments of tax with respect to each of the returns involved, and that a portion of the underpayments due to fraud. For purposes of section 6653(b), fraud amounts to an intentional wrongdoing with the specific intent to evade a tax believed to be owed. Powell v. Granquist,252 F.2d 56, 60 (9th Cir. 1958). *375 The question is ultimately one of fact, and the burden is on the respondent to prove fraud by clear and convincing evidence. Section 7454(a); Rule 142(b). Fraudulent intent may be shown by circumstantial evidence and reasonable inferences drawn from the facts. Stone v. Commissioner,56 T.C. 213, 224 (1971). Among the factors evidencing fraud in this case are the following: (1) As regards both the corporation and the individual cases, despite being repeatedly afforded the opportunity to explain apparent omissions of income, Mr. Budrow consistently declined to provide any information whatsoever; (2) there were substantial and consistent omissions from gross income for both the corporate and individual petitioners throughout and prior to the years in question; and (3) Mr. Budrow engaged in acts of concealment of income, including diversion of corporate receipts to his own benefit rather than depositing the receipts in the corporate accounts and recording them as income on the books and records, and the use of a dormant purported corporation to engage in business transactions. The evidence also shows beyond question the total domination of the business affairs of *376 Massachusetts Investment Corporation and the financial affairs of Mr. and Mrs. Budrow by Mr. Budrow, and his active participation in those affairs such that we believe he clearly had knowledge as to the transactions giving rise to the omitted income. As to Mrs. Budrow, pursuant to the previously discussed stipulation entered into between her and respondent, and since we have determined that amounts in excess of 25 percent of the gross income stated on the returns have been omitted for such returns, she is to be relieved of liability pursuant to the provisions of section 6013(e). Decisions will be entered for respondent as to William W. Budrow in Docket No. 9539-78 and 9762-79.
Decision will be entered for respondent in Docket No. 12966-78.
Decisions will be entered for petitioner Joan F. Budrow in Docket Nos. 9539-78 and 9762-79.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
2. Pursuant to the order of assignment and on the authority of the "otherwise provided" language of Rule 182, Tax Court Rules of Practice and Procedure↩, the post-trial procedures set forth in that rule are not applicable in this case.
3. All Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated. ↩
4. These cases were previously scheduled for trial on November 30, 1981, in the Tax Court Courtroom in New York, New York, before Judge Sheldon V. Eckman. No appearance was made by or on behalf of petitioners William Wendell Budrow or Massachusetts Investment Corporation in connection with that scheduled trial session, and respondent moved for default.However, Judge Eckman died on January 18, 1982, before orders were entered, and the matter was thereafter rescheduled for trial on April 19, 1983.↩